**STATE of Missouri, Respondent,**

v.

**Tyrone ANDERSON, Appellant.**

**No. 50301.**

Missouri Court of Appeals,
Eastern District,
Division Two.

March 4, 1986.

Motion for Rehearing and/or Transfer
Denied April 8, 1986.

Application to Transfer Denied
May 13, 1986.

Debra A. Buie, St. Louis, for appellant.

William L. Webster, Carrie Francke, Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals from a jury conviction of first degree burglary. He was sentenced as a prior offender to eight years imprisonment. We affirm.

At about 7:30 p.m. on October 30, 1984, eleven year old Kelly Thomas was home alone watching television when she heard a knock on her front door. Kelly went to the door, turned on the porch light, and saw two men standing on the porch. At trial, Kelly identified defendant as one of the men. The man Kelly identified as the defendant asked if her father was home, and Kelly said he was not. The two men left.

Approximately five minutes later, Kelly heard another knock at the front door. There, the man Kelly identified at trial told her he wanted to leave her father a note. As he passed a business card through the mail slot, Kelly heard a loud noise coming from her bedroom. She took the card and hid under a nearby table. She saw a different man come from the kitchen to the front door. After the man went out the front door, Kelly locked it behind him. Kelly then grabbed her mother's gun and hid under her parents' bed.

The other man tried to enter the house again through the front door. Finding it locked, he climbed through a bedroom window, and entered the room in which Kelly was hiding. This man left through the front door. After he left, Kelly heard a man come through her window and say "damn, damn." Kelly testified she recognized the voice as that of the defendant. The other man subsequently entered the house again, and left after unsuccessfully looking for Kelly.

When Kelly's father returned home from work, a friend told him defendant and a Patrick Dunn had entered his house. They were subsequently arrested. After his arrest, defendant told a police officer he entered the house, but did not remove anything.

After her father told her the names of the two suspects, Kelly viewed a photo array. The photos had the subjects' names and other information below each picture. Upon viewing the photos, Kelly identified defendant. Defendant's motion to suppress Kelly's out of court identification and "... all testimony by said witness at the trial of this cause regarding in-court identification of the defendant" was sustained.

In his sole point relied on, defendant asserts the trial court committed plain error in allowing Kelly to identify him at trial. Defendant maintains the identification resulted in manifest injustice because it was inseparable from the impermissibly suggestive pre-trial identification. We disagree.

We find no manifest injustice or miscarriage of justice in the trial court's permitting Kelly to make an in-court identification of defendant. Reliability is the "linchpin" in determining the admissibility of identification testimony. *State v. Higgins*, 592 S.W.2d 151, 160 (Mo. banc 1979). Kelly testified she viewed the defendant two separate times within five minutes, from a distance of ten to fifteen feet. She showed a remarkable ability to remember details of the two men, including their clothing and the brand name of the shoes one of the men was wearing. Kelly also remembered the names of the television shows she was watching that evening. There was no evidence of suggestiveness on the part of the police; Kelly's *father* told her the names of the suspects. In addition, defendant admitted being at the house on the night in question. We conclude the pre-trial identification procedure did not render Kelly's in-court identification of defendant a manifest injustice or a miscarriage of justice. Rule 30.20; *State v. Ross*, 554 S.W.2d 522, 524 (Mo.App.1977).

Judgment affirmed.

DOWD, P.J., and REINHARD, J., concur.